## WEBSTER *v.* CALEF.

One tenant in common, who holds possession and receives the income of the whole land owned in common by permission of his co-tenant, but without any agreement to account, is not liable to his co-tenant, at common law, in an action for use and occupation, nor in an action of assumpsit under ch. 180, sec. 6, Revised Statutes, of this State.

THIS is assumpsit, and there are seven counts in the declaration, three of which are special under ch. 180, sec. 6, of the Revised Statutes, giving a remedy where one co-tenant of real estate holds the exclusive possession and income thereof against the will and without the consent of his co-tenant. Three counts are for the use and occupation of the same land, and the other for interest on moneys.

It appeared that the plaintiff and the defendant's wife were two of six children, and heirs of David Webster, senior, who died intestate in 1847, seized of this and considerable quantity of other real estate, and that plaintiff and Franklin Webster were appointed and acted as administrators of the estate of the deceased.

Soon after the decease of the intestate the defendant entered into possession of the land in question, about thirty-eight acres, upon an agree-

ment with the plaintiff, that, so far as he was concerned, the defendant should have the land at the inventory of the appraisers of the estate of said deceased, which was $1800, and the said Calef continued to occupy the land from that time, commencing in June, 1847, until the spring of 1865, when partition was made of the estate of the deceased, upon plaintiff's petition, and a portion of this tract set off to the plaintiff. That during all this time, the defendant cultivated the land and took the entire profits thereof to his own use, but there was no evidence that the plaintiff at any time objected to his doing so, but on the contrary the plaintiff testified that he always expected that the defendant would take the land at the appraisal as aforesaid, and pay the interest on that sum, although he testified that nothing further was said between them on the subject after the entry as above stated.

It appeared that the plaintiff and defendant for their joint benefit purchased the shares of three of the other heirs, in the real and personal estate of the deceased; that is, of William P. Webster, November 15, 1848, of James J. P. Webster, January 15, 1849, and Veranus Webster, May 8, 1851.

The plaintiff testified that when they bought of the other heirs, he understood that Calef had his word that he should have the farm at the inventory, and he supposed that on the final adjustment the defendant would take it at the inventory and pay the interest.

He also testified that, soon after defendant went into possession of the place, he made additions to the house and barn, finished off the upper part of the house, and painted the outside and set out an orchard of sixty or seventy apple trees, the plaintiff living near by.

At the close of the plaintiff's evidence the defendant moved for a nonsuit, and it was ordered by the court, subject to the plaintiff's exception.

Either party may read the pleadings at the hearing and the proceedings upon the petition for partition.

The questions of law arising on the case were assigned to the whole court for determination.

*Morrison & Stanley, H. Foster,* and *S. N. Bell,* for plaintiff.

By ch. 191, sec. 7, p. 459, of the Compiled Statutes, it is provided that "if any co-tenant of any real estate shall hold the exclusive possession and income thereof against the will and without the consent of his co-tenant, the co-tenant so excluded may in action of assumpsit recover of the person holding such possession the full amount of all damages he may have sustained thereby."

By the common law one co-tenant could not maintain an action at law against another to recover his share of the income of real estate owned in common by them, and it was the design of the legislature to change the rule in this respect. It is claimed that this statute only applies where the co-tenant who brings the suit is forcibly excluded from the possession of the common property, but we maintain that it was not the intention of the legislature to restrict its operation within so narrow limits. It was manifestly their purpose to give a new remedy where none had pre-

viously existed, and save the necessity in this class of cases of a resort
to the equity powers of the court.   If it had not been, why was the act
passed?   And if it is to be restricted in the manner above suggested, it
only affords a remedy in one class of cases, and that a very limited num-
ber.   But if the limited construction is to be given to this statute which
is claimed for it on the part of the defendant, and that in order to main-
tain this action we must satisfy the jury that the defendant had the ex-
clusive possession and income of the premises in question against the
will and without the consent of the plaintiff, then we claim that the court
erred in ordering a nonsuit.   The question of whether the occupation of
the defendant was without the consent and against the will of the plain-
tiff was one of fact for the jury, to be determined by them from all the
facts and circumstances disclosed in the case, and in order to sustain the
ruling of the court it must clearly appear that there was no evidence
competent for the jury to consider as bearing upon this question.   Now
we maintain that the evidence does not show conclusively that the de-
fendant did not hold possession of the premises in question without the
consent of the plaintiff.   The evidence reported declares the fact that at
the time the defendant went into possession the plaintiff expected that
he would take the land at the appraisal, and that nothing further was
said about it; that when he and the defendant purchased of the other
heirs, he understood that Calef had his word that he should have the
farm at the inventory, and he supposed that on the final adjustment the
defendant would take it at the inventory and pay the interest.   The pro-
ceedings in the partition of the premises in question, make a part of the
case.   It appears that the partition was made upon the petition of the
plaintiff.   This is an important fact, bearing upon the question of occu-
pation.   The proceeding of partition may be termed adverse.   It may
be fairly inferred from it that the parties did not agree and that the plain-
tiff in this suit was obliged to resort to that proceeding in order to get
possession of what actually belonged to him.   Taking all the evidence
into the account, we submit that it was competent to be submitted to the
jury upon the question at issue; and upon it if the verdict had been for
the plaintiff it could not be disturbed, for it is too well settled to require
the citing of authorities, that where evidence is competent to be submit-
ted to a jury, it is for them to give it such weight as they think it enti-
tled to, and return their verdict accordingly.   If, then, this evidence
was competent to be submitted to the jury upon the question at issue, of
which we cannot doubt, the ruling of the court sustaining the motion for
a nonsuit was wrong.   But there is another view in which the court were
wrong in granting the motion.   There are three counts in the writ for
use and occupation.   Now if the evidence was so conclusive upon the
question raised in the three counts against the defendant as co-tenant
with the plaintiff as to leave nothing for the jury to determine upon them,
it was certainly competent upon the question of use and occupation.
The position that assumpsit cannot be maintained by one co-tenant
against another to recover his just share of the income of the estate held
in common, cannot, we believe, be successfully questioned.   We are not
able to find in our own reports any case where this question has been

raised or decided, but in Massachusetts it is settled in numerous decisions that such an action can be maintained upon the principles of the common law, as administered in many instances since the statute of 4 Anne, chap. 16. Under that statute it is held that where one co-tenant has received more than his share of the rents or income of the common estate he is liable in an action of assumpsit to his co-tenant. Washburne on Real Property, 2d ed., vol. 1, p. 436.

And this, says the author, now seems to be the law generally in the United States. The first case in which this question arose was *Jones* v. *Haraden*, which was decided in 1784, and is reported in 9 Mass. 540, note. In that case it is expressly decided that assumpsit may be maintained; and the case is cited and the same point is affirmed in *Bingham* v. *Eveleth*, 9 Mass. 538. See, also, *Shepard* v. *Richards*, 2 Gray 424; *Dickinson* v. *Williams*, 11 Cush. 258; *Gower* v. *Shaw*, 40 Me. 53; and other authorities referred to in Washburn on Real Property before cited.

From the authorities above cited it would seem that the law in other States is well settled, and that assumpsit might be maintained. If this is the law of the State then the evidence was clearly competent under the counts for use and occupation.

The case of *Smith* v. *Woodman*, 28 N. H. 520, may be urged as an authority in support of the ruling of the court in this case, but a careful examination will show that the questions here presented were not decided by the court—that the case went off upon other and different grounds, and so is not in point in this case.

*C. R. Morrison*, and *G. Y. Sawyer & Sawyer, Jr.*, for defendant.

1. No case is cited to show that where one co-tenant occupies and improves the premises as his own, without objection and without any agreement to account, he is liable for the rents and profits in equity, any more than at law. On the contrary, Lord Eldon says, *Pulteney* v. *Warren*, 6 Ves. 93, that "where there has been an adverse possession, and upon an application to this court, upon grounds of equitable relief, the plaintiff appears entitled to an account of the rents and profits; if there has been an adverse possession without fraud, concealment, or an adverse possession of some instrument, without which the plaintiff could not proceed, the court has said the account shall be taken only from the time of filing the bill, for it is his own fault not to file it sooner." And see *Drummond* v. *The Duke of St. Albans*, 5 Ves. 439; *Pickett* v. *Loggon*, 14 Ves. 244. Where the plaintiff has been guilty of *laches*, the court, even in cases of trust, will not be disposed to give an account further back than from the time of filing the bill. *Pettiward* v. *Prescott*, 7 Ves. 547.

A bill for an account of mesne profits cannot be maintained at all, without showing special ground of equity jurisdiction. *Pulteney* v. *Warren*, 6 Ves. 73, 88, 89, 90.

2. To recover under the statute, upon the facts as reported, the plaintiff must strike out of his declaration, and out of the statute, the

material qualifying words, "against the will and without the consent of his co-tenant," which plainly would be to make a new statute, instead of construing the existing one.

The statute applies only to a co-tenant who is "excluded" from the possession, and substitutes assumpsit for the common law remedies in such a case. *Great Falls Co.* v. *Worster*, 15 N. H. 460; *Odiorne* v. *Lyford*, 9 N. H. 510, 511; *Smith* v. *Woodman*, 28 N. H. 528, 532.

3. The partition went by default. The default admitted the material allegations of the petition, and nothing more. It was alleged that at the date of the petition, the parties were co-tenants of the shares therein stated. This, for the purposes of that proceeding, was admitted by the default. But how this is to be deemed evidence that they *had been* co-tenants, prior to that time, or that the defendant had "excluded" the plaintiff from the possession, is not apparent. *King* v. *Chase*, 15 N. H. 596; *Taylor* v. *Dustin*, 44 N. H. 493; *Willson* v. *Willson*, 25 N. H. 229.

4. Upon the facts found, the case is not brought within the statute of 4 Anne c. 16. *Henderson* v. *Eason*, 9 E. L. & Eq. 337; *Sargent* v. *Parsons*, 12 Mass. 149. And *Mussey* v. *Holt*, 24 N. H. 248, 254, is a direct decision of this court, that assumpsit for use and occupation will not lie.

Nor do the Massachusetts decisions give any support to the action, under the facts that appear. *Jones* v. *Haraden*, 9 Mass. 540, was an action for money had and received, to recover the plaintiff's share of the proceeds of a ship and cargo sold by the defendant. *Bingham* v. *Eveleth*, 9 Mass. 538, and *Dickinson* v. *Williams*, 11 Cush. 258, were also for the recovery of money received by the defendant, and not for use and occupation. And in *Shepard* v. *Richards*, 2 Gray 424, the rule is stated to be in that State, that "a tenant in common who has received in money more than his share of the profits of the estate, is liable to his co-tenant in an action of law for the surplus." On the other hand, *Sargent* v. *Parsons*, 12 Mass. 149, *Wilbur* v. *Wilbur*, 13 Met. 404, *Peck* v. *Carpenter*, 7 Gray 283, and *Gower* v. *Shaw*, 40 Me. 53, are decisively against the plaintiff's action for use and occupation, there having been no express promise shown to sustain the suit.

The case shows bad faith or gross laches on the part of the plaintiff in attempting to compel an accounting of receipts and disbursements, after the lapse of almost twenty years, and in violation of his own agreement, for it does not appear that the defendant ever objected to a settlement in accordance with the original agreement, if the plaintiff would have permitted it; and no such evidence exists.

SARGENT, J. By the law of England prior to the 4 Anne Ch. 16, it was a well settled law that if one tenant in common occupied and took the whole profits, the other had no remedy against him while the tenancy in common continued, unless he was put out of possession, when he might have his ejectment; or unless he appointed the other to be his bailiff as to his undivided moiety, and the other accepted that appointment,

in which case an action of account would lie against the bailiff, as in the case of the owner of an entirety of an estate.

Until the statute of Anne this state of the law continued. That statute in sec. 27 provides that an action of account may be brought and maintained "by one joint tenant and tenant in common, his executors or administrators, against the other as bailiff, for receiving more than comes to his just share and proportion, and against the executor and administrator of such joint tenant or tenant in common."

But under this act it was held that if one of two tenants in common solely occupy the land, farm it at his own cost, and take the produce for his own benefit, his co-tenant cannot have an action of account against the former as his bailiff, by reason of the former having received more than comes to his just share and proportion. But it was held that this statute of Anne applied only to cases where rent or payment in money, or in kind due in respect of the premises, is received from a third party by one co-tenant who retains for his own use the whole or more than his proportional share. *Henderson* v. *Eason*, 9 Eng. L. & Eq. 337, 340 ; S. C. 17 Adol. & Ellis N. S. 701 ; 4 Kent's Com. 369, 370.

It is claimed in argument that by the holdings in Massachusetts, this action may be maintained on the general counts. In *Shepard* v. *Richards*, 2 Gray 424, where the cases are reviewed, it is held that one tenant in common who has received in money more than his share of the profits of the estate, is liable to his co-tenant in an action at law for the surplus ; but that, in order to support such an action, it must appear that the defendant has received more than his share, not merely of a single article of produce, but of the entire profits of the estate after deducting all reasonable charges, and that the balance is due to the plaintiff and not to other co-tenants ; and in *Peck* v. *Carpenter*, 7 Gray 283, it is held that a tenant in common who has accepted and taken the profits of the joint estate, is not liable to his co-tenant for a share thereof, unless he has received money for the proceeds of the crops, beyond the amount of his own share.

In *Odiorne* v. *Lyford*, 9 N. H. 502, the general doctrine is stated that while one tenant in common cannot exclude another tenant in common from the possession of the common land, and if he thus ousts his · co-tenant he will be liable in trespass, yet that for a mere breaking and entering and taking the whole profits, trespass cannot be maintained. *Great Falls Co.* v. *Worster*, 15 N. H. 460 ; *Smith* v. *Woodman*, 28 N. H. 528.

This last case is also an authority to the point that the plaintiff cannot recover on the general counts in this case, as is also *Mussey* v. *Holt*, 24 N. H. 428. Our statute provides that "if any co-tenant of any real estate shall hold the exclusive possession and income thereof against the will and without the consent of his co-tenant, the co-tenant so excluded may, in action of assumpsit, recover of the person holding such possession the full amount of all damages he may have sustained thereby."

By this provision it was intended to provide a more simple and direct remedy for the co-tenant who had been excluded or ousted of the possession of the common land, but it could not have been intended, we

think, to change the whole common law, in regard to the nature of tenancies in common, but it was intended that this new remedy should be confined to the case stated in the statute where the holding by one tenant was without the consent and against the will of the co-tenant.

Upon this construction of the statute the evidence does not sustain the action upon the special counts ; and upon the principles of the common law as settled by the authorities, the evidence here does not sustain the action upon the general counts for use and occupation.

But it is claimed in the argument that the question should have been submitted to the jury, as to whether the occupation was in fact against the will and without the consent of the plaintiff. But upon the evidence stated there would seem to be no doubt upon that point. Plaintiff testified that he always expected the defendant would take the land at the appraisal, &c., and that he always understood that on the final adjustment the defendant would take the farm at the inventory and pay the interest. The case also finds that there was no evidence that plaintiff at any time objected to defendant's thus occupying and cultivating and taking the profits of the land to his own use. In other words, there was no evidence tending to prove that the possession of the defendant was against plaintiff's will, while the evidence from himself was that he never objected but in fact consented to such occupancy. Upon this evidence there was nothing for the jury, especially since the possession of the land by one will be presumed to be rightful, and with the consent of the co-tenant, until the contrary is proved.

Exceptions overruled.

*Judgment of nonsuit.*